**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**CIVIL CASE NO. 5:11-CV-111-RLV-DCK**

| | | |
|---|---|---|
| **RICKIE R. DANCY,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM AND** |
| **v.** | ) | **RECOMMENDATION** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER IS BEFORE THE COURT** on Plaintiff's "Motion For Summary Judgment" (Document No. 8) and the "Commissioner's Motion For Summary Judgment" (Document No. 12). This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §636(b)(1)(B). After careful consideration of the written arguments, administrative record, and applicable authority, the undersigned will respectfully recommend that Plaintiff's "Motion For Summary Judgment" be denied in part and granted in part; that the Commissioner's "Motion For Summary Judgment" be denied; and that the Commissioner's decision be vacated and this matter be remanded for further consideration.

## I. BACKGROUND

Plaintiff Rickie Regina Dancy("Plaintiff"), through counsel, seeks judicial review of an unfavorable administrative decision on her application for disability benefits. (Document No. 9). On May 19, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. § 405 *et seq*., alleging an inability to work due to a disabling condition beginning July 15, 2005. (Transcript of the Record of Proceedings ("Tr.") 12, 60, 118). The Commissioner of Social Security (the "Commissioner" or

"Defendant") denied Plaintiff's application initially on August 2, 2010, and again after reconsideration on November 5, 2010. (Tr. 12). Plaintiff filed a timely written request for a hearing on November 30, 2010. (Tr. 12).

On April 21, 2011, Plaintiff appeared and testified at a video hearing before Administrative Law Judge Frederick McGrath ("ALJ"). (Tr. 12, 44-57). In addition, Plaintiff's attorney, Timothy D. Welborn, appeared at the hearing. Id. On May 3, 2011, the ALJ issued an unfavorable decision denying Plaintiff's claim. (Tr. 9-20). Plaintiff filed a request for review of the ALJ's decision on May 13, 2011, which was denied by the Appeals Council on June 18, 2011. (Tr. 1-4, 6). The May 3, 2011 ALJ decision thus became the final decision of the Commissioner when the Appeals Council denied Plaintiff's review request. (Tr. 1).

Plaintiff's "Complaint" seeking a reversal of the ALJ's determination was filed in this Court on August 17, 2011 (Document No. 1), and the undersigned was assigned to her case as the referral magistrate judge on the same day. Plaintiff's "Motion For Summary Judgment" (Document No. 8) and "Memorandum In Support Of Motion For Summary Judgment" (Document No. 9), were filed on December 22, 2011; and the "Commissioner's Motion For Summary Judgment" (Document No. 12) and "Memorandum In Support Of The Commissioner's Decision" (Document No. 13), were filed April 3, 2012. The pending motions are ripe for disposition, and therefore, a memorandum and recommendation to the Honorable Richard Voorhees is appropriate.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the Commissioner applied the correct legal standards.

Richardson v. Perales, 402 U.S. 389, 390 (1971); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

The Fourth Circuit has made clear that it is not for a reviewing court to re-weigh the evidence or to substitute its judgment for that of the Commissioner – so long as that decision is supported by substantial evidence. Hays, 907 F.2d at 1456 (4th Cir. 1990); see also, Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); Hancock v. Astrue, 657 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence has been defined as 'more than a scintilla and [it] must do more than create a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

Ultimately, it is the duty of the Commissioner, not the courts, to make findings of fact and to resolve conflicts in the evidence. Hays, 907 F.2d at 1456; King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979) ("This court does not find facts or try the case *de novo* when reviewing disability determinations."); Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistences in the medical evidence, and that it is the claimant who bears the risk of nonpersuasion."). Indeed, so long as the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court disagrees with the final outcome. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION

The question before the ALJ was whether Plaintiff was under a "disability" as that term of art is defined for Social Security purposes, at any time between July 15, 2005, the alleged onset date,

and December 31, 2008, Plaintiff's date last insured .[1]  (Tr. 12).  To establish entitlement to benefits,

Plaintiff has the burden of proving that she was disabled within the meaning of the Social Security

Act.  Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).  The ALJ concluded that Plaintiff was not

under a disability at any time during this period.  (Tr. 20).

The Social Security Administration has established a five-step sequential evaluation process

for determining if a person is disabled.  20 C.F.R. § 404.1520(a).  The five steps are:

(1)     whether claimant is engaged in substantial gainful activity -
        if yes, not disabled;

(2)     whether claimant has a severe medically determinable
        physical or mental impairment, or combination of
        impairments that meet the duration requirement in § 404.1509
        - if no, not disabled;

(3)     whether claimant has an impairment or combination of
        impairments that meets or medically equals one of the listings
        in appendix 1, and meets the duration requirement - if yes,
        disabled;

(4)     whether claimant has the residual functional capacity
        ("RFC") to perform her/his past relevant work - if yes, not
        disabled; and

(5)     whether considering claimant's RFC, age, education, and
        work experience he/she can make an adjustment to other
        work - if yes, not disabled.

---

[1]  Under the Social Security Act, 42 U.S.C. § 301, *et seq.*, the term "disability" is defined as an:
inability to engage in any substantial gainful activity by reason of any medically determinable physical or
mental impairment which can be expected to result in death or which has lasted or can be expected to last
for a continuous period of not less than 12 months.  Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995)
(quoting  42 U.S.C. § 423(d)(1)(A)).

20 C.F.R. § 404.1520(a)(4)(i-v).  In this case, the ALJ determined at the fifth step that Plaintiff was not disabled.  (Tr. 19-20).

Specifically, the ALJ first concluded that Plaintiff had not engaged in any substantial gainful activity since July 15, 2005,  her alleged disability onset date.  (Tr. 14).  At the second step, the ALJ found that Plaintiff's abdominal pain/irritable bowel syndrome, obesity, major depressive disorder, anxiety disorder, and post-traumatic stress disorder were severe impairments.  (Tr. 14).[2]  At the third step, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments listed in 20 C.F.R. 404, Subpart P, Appendix 1.  (Tr. 15-16).

Next, the ALJ assessed Plaintiff's RFC and found that she retained the capacity to perform a wide range of medium work as defined in 20 C.F.R. 404.1567(c).  (Tr. 16-19).  Specifically, the ALJ found that Plaintiff could:

> understand, remember, and carry out simple instructions; maintain concentration and attention to perform simple, routine, and repetitive tasks; interact appropriately on an occasional basis (up to 1/3 of an 8-hour workday) for brief conversations of 5-10 minutes with co-workers and supervisors regarding job instructions and directions; could not work with the public; and could perform goal-oriented work at a non-production rate in a stable work environment.

In making this finding, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence," and he additionally considered opinion evidence.  (Tr. 16).  Based on this analysis, the ALJ

---

[2]  The determination at the second step as to whether an impairment is "severe" under the regulations is a *de minimis* test, intended to weed out clearly unmeritorious claims at an early stage.  See Bowen v. Yuckert, 482 U.S. 137 (1987).

determined that "the [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (Tr. 17).

Having determined the Plaintiff's RFC, at the fourth step the ALJ found that Plaintiff has no past relevant work. (Tr. 19). At the fifth and final step, the ALJ found that "[t]ransferability of job skills is not an issue because the [Plaintiff] does not have past relevant work." Id. The ALJ concluded that, through the date last insured, "considering [Plaintiff's] age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [Plaintiff] could have performed." Id. In making this determination, the ALJ first found that, despite Plaintiff's mental impairments, she can meet all of the "basic mental demands of competitive, remunerative, unskilled work," as defined in Social Security Ruling ("SSR") 85-15. Id. Based on this determination, he concluded that Plaintiff's "additional limitations had little or no effect on the occupational base of unskilled medium work," and "a finding of disability is not warranted." Id. Therefore, the ALJ concluded that Plaintiff was not under a "disability," as defined by the Social Security Act, at any time between July 15, 2005, the alleged onset date, and December 31, 2008, the date last insured. (Tr. 20).

We turn now to Plaintiff's arguments to this Court. Plaintiff on appeal to this Court makes the following assignments of error: (1) the ALJ erred in failing to evaluate Plaintiff's mental impairment and resulting functional limitations as required by 20 C.F.R. 404.1520(a); and (2) the ALJ erred by failing to follow established guidelines of SSR 02-1p that Plaintiff's obesity is severe

and affects her ability to work.  (Document No. 9, p.2).  The undersigned will discuss each of these contentions in turn.

### A.  ALJ's Evaluation of Plaintiff's Mental Impairment

In her first assignment of error, Plaintiff argues that the ALJ failed to evaluate her mental impairment and resulting functional limitations as required by 20 C.F.R. 404.1520(a).  (Document No. 9, p.7).  Specifically, Plaintiff contends that "[t]he ALJ erred in discounting the severity of the [her] mental condition prior to her date last insured."  (Document No. 9, p.7-11).

Here, the undersigned finds the Commissioner's argument that Plaintiff "has failed to establish that she is affected by any limitations in excess of those outlined by the ALJ in his RFC determination" to be persuasive.  (Document No. 13, p. 6).  As the Commissioner notes, the Plaintiff, not the Commissioner, bears the burden of establishing her RFC.  (Document No. 13, p.5).  Plaintiff correctly contends that her medical records show that she suffered from mental health impairments both during and after her date last insured.  (Document No. 9, p.10).  However, contrary to Plaintiff's claim that "the ALJ did little more than state that 'the claimant's condition was very poor' after her last insured date and 'was considerably better prior to her date last insured,'" it appears that the ALJ sufficiently analyzed all of the medical evidence presented before rendering his decision regarding Plaintiff's mental impairment prior to the date last insured.  (Tr. 17-18).

Plaintiff cites several cases decided by the Fourth Circuit Court of Appeals where that court "held that medical evaluations made subsequent to the expiration of a claimant's insured status are not automatically barred from consideration and may be relevant to prove a previous disability."  (Document No. 9, p.8).  The undersigned agrees with Plaintiff's claim that the Fourth Circuit "has recognized that a treating physician may properly offer a retrospective opinion on the past extent of

7

an impairment." (Document No. 9, p.9). However, Plaintiff's reliance on the cases cited in her memorandum regarding this matter appears to be misplaced based on the facts of her case.

For example, Plaintiff points to Cox v. Heckler, where the Fourth Circuit remanded a case based on its concerns that evidence of medical treatment provided after plaintiff's last date insured could show that the plaintiff's condition had progressed to a "disabling degree" prior to the last date insured. (Document No. 9, p.8) (citing Cox, 770 F.2d 411 (4th Cir. 1985)). However, unlike the situation in Cox, in the current case it appears that the ALJ sufficiently considered medical evidence of Plaintiff's mental health impairments, both before and after the date last insured. (Tr. 17-18). In Cox, the plaintiff's prescription for the use of home oxygen fell outside of the period of insurance coverage, but it was based on studies performed during that period. See 770 F.2d at 413.

Here, it does not appear that Plaintiff's diagnoses and treatments provided after the date last insured could show that Plaintiff's mental condition was disabling prior to the date last insured. In fact, the ALJ specifically noted that prior to Plaintiff's date last insured, she "was not attending outpatient or inpatient mental health treatment," a non-psychiatric treating physician noted that her depression was better with treatment, and "she reported that she felt like her depression was well-controlled." (Tr. 17-18). The ALJ additionally assessed Plaintiff's treating records for the time period relevant to her claim, as well as the "documented worsening of her mental condition in 2009 and 2010 to the extent that it provides a context for her pre-2009 records," before concluding that she "could perform a wide range of unskilled tasks despite her mental impairments during this period." (Tr. 18).

Plaintiff further contends that the ALJ committed reversible error by refusing to allow her "counsel to develop the origin and longstanding nature of [her] mental health condition" at the

hearing and by failing to address the matter in his decision. (Document No. 9, p.10-11). The undersigned respectfully disagrees with Plaintiff and instead agrees with the Commissioner that Plaintiff's argument on this issue is "without merit." (Document No. 13, p.6). As the Commissioner notes, the record shows that while the ALJ did not permit Plaintiff's counsel to elaborate on Plaintiff's childhood trauma during his examination of Plaintiff at the hearing, the ALJ did allow Plaintiff's counsel to describe Plaintiff's history of being physically and verbally abused during his opening statement. (Document No. 13, p.6-7; Tr. 46-48). Additionally, the ALJ acknowledged his understanding of Plaintiff's "horrible" history and stated, "[i]t's entered in the record." (Tr. 48). Finally, before ending the hearing, the ALJ asked Plaintiff's attorney if there was anything more that he wished to add, and the attorney declined this offer to further develop the record. (Tr. 57).

Therefore, despite the extremely limited duration of the hearing, the undersigned finds that the ALJ's decision makes sufficient references to the entire record, including Plaintiff's medical records and opinion evidence. Accordingly, the undersigned finds that the ALJ has satisfied his duty to fully and fairly develop the record. Based on a review of the entire record, the undersigned finds that substantial evidence supports the ALJ's determination that "prior to the date last insured of December 31, 2008, the [Plaintiff's] psychiatric condition was relatively stable." (Tr. 15-19).

### B. ALJ's Evaluation of Plaintiff's Obesity

Next, Plaintiff argues that the "ALJ erred by failing to follow the established guidelines of SSR 02-1p that the [Plaintiff's] obesity is severe and affects her ability to work." (Document No. 9, p.11-14). Specifically, Plaintiff contends that "[t]he ALJ did not address the effect of the condition upon [her] ability to sit, stand, walk, lift, carry, push, pull, climb, balance, stoop, crouch or manipulate. Neither did he address or explain whether it would affect her tolerance of environmental

9

conditions or her ability to sustain work activity." (Document No. 9, p.11). Plaintiff claims that the ALJ erred by failing to "elaborate further to demonstrate how Claimant's obesity affected her ability to work." (Document No. 9, p.14). Plaintiff relies on Boston v. Barnhart and Woody v. Barnhart to support her claim that "[o]ther district courts have also found that failure of the ALJ to specify what weight was given to the effect of obesity is grounds to reversal or remand." (Document No. 9, p.14) (citing Woody, 326 F. Supp. 2d 744 (W.D. Va. 2004); Boston, 332 F. Supp. 2d 879 (D. Md. 2004)).

Social Security Ruling ("SSR") 02-01p provides guidance to the Court on this matter. 2000 WL 628049, at *1. SSR 02-01p "instruct[s] adjudicators to consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's [RFC]." Id. This Rule further provides for "an individualized assessment of the impact of obesity on an individual's functioning when deciding whether the impairment is severe," as well as for an assessment "of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment. Id. at *4, 6. Finally, the Rule requires the ALJ to "explain how [he] reached [his] conclusions on whether obesity caused any physical or mental limitations," and when the ALJ identifies obesity as a medically determinable impairment, he is instructed to "consider any functional limitations resulting from the obesity in the RFC assessment." Id. at *7.

Plaintiff's case is similar to Fleming v. Barnhart, in which another district court deemed an ALJ's RFC determination to be "completely insufficient" based on the ALJ's conclusory findings regarding the plaintiff's obesity. 284 F. Supp. 2d 256, 271 (D. Md. 2003). In Fleming, the ALJ found the plaintiff's obesity to be a severe impairment at step two of the disability analysis, but then "merely stated at step three that plaintiff's fracture and obesity impairments, while severe, were not

severe enough to meet or medically equal any of the listed impairments." Id. The court criticized the ALJ's decision on this matter, stating, "[w]ith that conclusory statement, and no other explanation whatsoever, the ALJ moved on to step four, where, in determining plaintiff's RFC, he simply made no mention whatever of plaintiff's extreme obesity which he had found severe at step two, or in fact of any of the evidence regarding plaintiff's functional limitations." Id.

An analysis of the court's decision in Fleming is helpful to the Court's review of Plaintiff's case. The Fleming court noted that "[a]n RFC assessment must 'include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts and non-medical evidence." Id. at 271-72 (citing SSR 97-8p, 1996 WL 374184, at *6 (S.S.A. 1996); 42 U.S.C. § 405(b)(1) (requiring the ALJ to provide reasons for any decision); 5 U.S.C. § 557(c)(3) (requiring decisions to include 'a statement of findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law or discretion presented on the record); Cook v. Heckler, 783 F.2d 1168, 1172 (4th Cir. 1986)). The court also stated, "[t]he regulations specifically require the ALJ to consider the effects of obesity at steps three and four when combined with [other impairments]." Id. at 270. Ultimately, the court remanded the case for further consideration, finding that "the incomplete explanation in this case is, as a matter of law, insufficient to meet what is required under the Act and supporting case law and does not enable this Court to determine if the ALJ's opinion is supported by substantial evidence." Id. at 272, 276 (citation omitted).

In the present case, the ALJ declared Plaintiff's obesity to be a severe impairment at step two of his analysis, but then failed to mention this impairment at step three. (Tr. 14-16). Further, in his assessment of Plaintiff's RFC, the ALJ merely recognized Plaintiff's obesity diagnosis, described the general impacts that obesity can have on an individual, and concluded, "[t]hese considerations have

been taken into account in reaching the conclusions herein." (Tr. 17). Finally, in determining that Plaintiff could perform medium exertional work from a physical standpoint, the ALJ simply stated that he had considered Plaintiff's obesity. Id. This was the extent of the ALJ's consideration of Plaintiff's obesity.

Based on a review of the ALJ's decision, the undersigned finds that the ALJ has not provided enough information to show that he "meaningfully consider[ed] the effect of [Plaintiff's] obesity." Padilla v. Astrue, 2011 WL 6303248, at *8 (D. N.J. Dec. 15, 2011). The courts have made it clear that "an ALJ must meaningfully consider the effect of a [Plaintiff's] obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009). "Consideration [of obesity] requires more than simply stating conclusions of ultimate findings or using boiler-plate language." Padilla, at *6 (citation omitted).

Therefore, based on the ALJ's cursory analysis of the impact of Plaintiff's obesity on her functional capabilities, the undersigned cannot determine whether the ALJ's decision on this matter is supported by substantial evidence. Therefore, the undersigned recommends that the ALJ's decision with respect to Plaintiff's obesity be remanded to the ALJ for further review in light of the foregoing analysis.

## IV. CONCLUSION

In short, the undersigned concludes that the requisite substantial evidence review is frustrated by the ALJ's failure to fully consider the effect of Plaintiff's obesity on her ability to work. Therefore, the undersigned finds that there is not "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," and thus substantial evidence does not support the

Commissioner's decision.  Richardson v. Perales, 402 U.S. 389, 401 (1971);  Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005).  As such, the undersigned will recommend that the Commissioner's decision be vacated and that this case be remanded for further consideration.

## V.  RECOMMENDATION

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion For Summary Judgment" (Document No. 8) be **DENIED** in part and **GRANTED** in part; the "Commissioner's Motion For Summary Judgment" (Document No. 12) be **DENIED**; and the Commissioner's determination be **VACATED** and this matter be **REMANDED** for further consideration.

## VI.  TIME FOR OBJECTIONS

The parties are hereby advised that pursuant to 28 U.S.C. § 636(b)(1)(C), and Rule 72 of the Federal Rules of Civil Procedure, written objections to the proposed findings of fact, conclusions of law, and recommendation contained herein may be filed within fourteen (14) days of service of same. Responses to objections may be filed within fourteen (14) days after service of the objections. Fed.R.Civ.P. 72(b)(2).  Failure to file objections to this Memorandum and Recommendation with the District Court constitutes a waiver of the right to *de novo* review by the District Court.  Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005).  Moreover, failure to file timely objections will preclude the parties from raising such objections on appeal.  Diamond, 416 F.3d at 316;  Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003);  Snyder v. Ridenhour, 889 F.2d 1363, 1365 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), reh'g denied, 474 U.S. 1111 (1986).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties and the Honorable Richard Voorhees.

13

**IT IS SO RECOMMENDED**.

Signed: June 14, 2012

David C. Keesler
United States Magistrate Judge